## H. R. TABOR *v.* STATE.

[56 South. 171.]

1. CRIMINAL LAW. *Murder. Instructions. Improper evidence.*

One convicted of manslaughter cannot complain of instructions on murder.

2. ADMISSION OF IMPROPER EVIDENCE.

Where in a criminal case improper evidence is admitted for the state over defendant's objection and the court cannot say with confidence that no other verdict than that of guilty could reasonably have been reached if such improper evidence had been excluded, the case will be reversed.

APPEAL from the circuit court of Lafayette county.

HON. W. A. ROANE, Judge.

H. R. Tabor was convicted of manslaughter and appeals.

The facts are as follows:

The state's theory, on the trial, was that accused lay in waite on the roadside for deceased and killed him. He testified that deceased came along on his horse and attempted to draw a pistol on him, when accused fired. A pistol was found on the body of deceased, with one cartridge discharged and five loaded chambers, a cartridge in one of which looked as if it had been snapped. On the trial, the wife of the deceased took the stand as a witness for the state and testified that a few days before the killing her husband had told her that he had put six cartridges in the pistol, which were all he had, and had thrown away the empty box, and that afterwards he had fired one of the cartridges, and that he had not used the pistol any more until he took it with him the day he was killed. This testimony was admitted over the objection of the defendant; the theory of the

state being that the deceased did not draw his weapon at all.

*Falkner, Russell & Falkner,* for appellant.

It was a very grave error to allow Mrs. Callicoat, wife of deceased, to quote the conversation had with her husband on Christmas Eve day about how many cartridges he had in his pistol. It simply gave the state another witness; it brought forth the dead man's statement, and under the peculiar facts of this case furnished substantial backing for the state's theory that this was an assassination. Because the witness, Billingsly, said that he examined the pistol and that it appeared not to have been fired. The witness, Fudge, stated that he noticed no difference in the report of the guns and especially in view of the fact that the district attorney laid great stress upon the mark on defendant's gun in his endeavor to show that this mark had been put there by defendant and had never been made by any bullet from deceased's pistol. A strong word picture of this mark is shown in the cross-examination of defendant. Where so much is at stake the admission of incompetent testimony to a point so grave is a very dangerous experiment with defendant's rights.

*Carl Fox,* assistant attorney-general for appellee.

It is said by counsel for appellant that it was error to admit testimony of Mrs. Callicoate, wife of deceased, about the conversation with her husband, on Christmas Eve day as to the number of cartridges in his pistol. I do not think the testimony was competent; but under the facts of the killing, as related by the defendant himself, it seems to me that it was not reversible error. Defendant testified that he shot the deceased in self-defense after deceased had fired at him with his pistol, striking the stock of his gun. He testified that he fired the second time in self-defense. As he crossed the road, on the way

home, as he said, deceased having disappeared from his sight after falling or being bucked from his mule, he came upon deceased kneeling with his pistol in his hand, and pointing at him. His own testimony makes out two separate affrays. He shot the first time because defendant had first fired at him. After an interval, in which the deceased had disappeared and defendant had abandoned any further attempt to kill the deceased, he again came upon deceased in an attitude to fire upon him, and again he fired the second time to save his life from a second attempt upon it by the deceased. Defendant testifies that after he fired the second time, deceased scrambled to his feet, and staggered a short distance away, and fell, and after a convulsve twitching, and jerking for a moment, he lay still, dead. Therefore, according to defendant's own testimony, it was the second shot which killed the deceased, and the deceased did not fire at defendant at that time. Of course, it may be true, that defandant's first shot might have killed deceased eventually; but by his own testimony, he shows that deceased was still able to defend himself, or to attack defendant, but that immediately after defendant fired the last shot, the deceased dropped his pistol, staggered a few steps, and fell dead. It makes no difference, therefore, whether deceased fired upon defendant or not, the instant before the defendant fired the first shot from the thicket from the East side of the road. It makes no difference whether deceased had five cartridges and one empty shell in his pistol, or whether he had six cartridges and fired one of them at that time. By the defendant's own testimony, it was the last shot that killed the deceased, and by the defendant's own testimony, he fired that shot, not because the deceased had at some short period of time before fired at him, but because the deceased, while kneeling, raised his pistol and pointed it at defendant as if to fire upon him. Therefore, if it was error to admit Mrs. Callicoat's testimony, of the conversation with her hus-

band concerning the number of cartridges in his pistol, it was harmless error.

Argued orally by *Lee M. Russell,* for appellant, and *Carl Fox,* assistant attorney-general, for appellee.

WHITFIELD, C.

The chief grounds relied on by the appellant are the giving of instruction No. 7 for the state, and the admission by the court, over the objection of the defendant, of the testimony of Mrs. Callicoate, detailing the conversation with her husband set out in the record.

As to the seventh instruction given for the state, we think there are two answers to the contention of the appellant: First. The appellant was only convicted of manslaughter, and instruction No. 7, complained of, was a murder instruction. Second. The evidence of the defendant himself pretty clearly shows that it was his second shot which killed the deceased. This contention is therefore not sound.

As to the contention with respect to the admission of the conversation between Mrs. Callicoate and her husband, it is to be remembered that the whole conduct of the trial in the court below manifestly shows that the state was laboring to develop the theory of a "lying in wait and assassination." Remembering this, and recalling the fact that the defendant is practically the only eyewitness to the material facts of the killing, and that he positively testified that when he fired the second shot the deceased was kneeling, facing him with his pistol in his hand pointed at him, we find ourselves unable to say that the admission of this testimony was not materially and fatally erroneous. It was, of course, manifestly incompetent, and it is not one of those cases in which we can rest in confidence upon the statement that no other verdict could reasonably have been reached if this conversation had been excluded, as it should have been.

*Reversed and remanded.*

PER CURIAM. The above opinion is adopted as the opinion of the court, and for the reasons therein set out the case is reversed and remanded.